UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAO LIANG, on behalf of himself and all
similarly situated persons,

      Plaintiff,                                 Case No. 08-11340

v.                                              Honorable Patrick J. Duggan

MARY JANE M. ELLIOTT, P.C.,

      Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_October 8, 2008.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

Gao Liang ("Plaintiff") initiated this action, on behalf of himself and similarly situated individuals, against Mary Jane M. Elliott, P.C. ("Defendant"), alleging violations the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Presently before this Court is Defendant's "Motion to Dismiss and Motion for Summary Judgment." Defendant's motion has been fully briefed, and the Court heard oral argument on Defendant's motion on October 2, 2008.

## I. Factual Background

The following facts are undisputed. Plaintiff is an individual who resides in Livonia, Michigan. Also located in Michigan, Defendant "is a collection law firm that participates in the collection process from the initial collection letter all the way through the collection suit process, if necessary." (Dft.'s Mot. Ex. A, Mary Jane M. Elliott Affidavit ("Elliott Aff.") ¶ 2.)

Plaintiff allegedly owes money on a credit card account he opened with Capital One Bank (USA), N.A. As of April 1, 2008, the amount due on this account was $6,107.80. Capital One retained Defendant to collect this $6,107.80 debt. According to Defendant's managing partner, Mary Jane M. Elliott, Defendant conducted an independent review and investigation into this alleged debt after it began representing Capital One in Plaintiff's collection matter.

On February 6, 2006, Defendant sent Plaintiff a collection or dunning letter. This letter was addressed to Plaintiff and bore the letterhead "**Mary Jane M. Elliott P.C.**, Attorneys & Counselors, 4300 Karim Blvd., Novi MI 48375" in the top left-hand margin. (Dft.'s Mot. Ex. B (emphasis in original).) The upper right-hand corner of the letter stated "NOTICE OF AMOUNT," listing Capital One as the creditor as well as the account number. (*Id.*) Below this, the letter provided that $6,107.80 was due and that this amount may accrue interest; Plaintiff was also instructed to make checks payable to "Mary Jane M. Elliott, P.C., 24300 Karim Blvd, Nov MI 48375." (*Id.*) The text of the letter, in its entirety, is as follows:

**This communication is form a debt collector. This is an**

> **attempt to collect a debt and any information obtained will be used for that purpose.**
>
> Please contact this office if you wish to pay this debt or set up payment arrangements to avoid any legal action being taken.
>
> Unless you dispute this debt, or any portion of it, within 30 days after you receive this notice, we will assume that it is valid.
>
> If you notify us in writing within the 30 day period that you dispute this debt or any portion of it, we will obtain verification of the debt or a copy of any judgment and mail it to you.
>
> If the above creditor is not your original creditor and you submit a written request within the 30 day period for the name and address of the original creditor, we will supply such information to you.
>
> If you do dispute this debt in writing in the 30 day period, we will pend collection until we send you verification.

(*Id.*) The letter, although unsigned, closed with the following signature block:

> Sincerely,
>
> [Blank Space]
>
> Mary Jane M. Elliott

(*Id.*)

Plaintiff responded to Defendant's letter in a letter dated February 26, 2008. In his letter, Plaintiff stated that he did not "know much about the past account. It must be some debt some time ago and we have no record so far and am in contact with Capital One Bank to verify the info." (Dft.'s Mot. Ex. D.) Plaintiff then requested that Defendant provide "any

verification documents available" on the Capital One account. (*Id.*) Defendant provided the requested verification on March 3, 2008.

Plaintiff initiated this lawsuit on March 28, 2008.

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present

significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

III. **Applicable Law and Analysis**[1]

The FDCPA generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e sets forth a nonexclusive list of sixteen different types of conduct that would violate this general prohibition. Pertinent here are 15 U.S.C. § 1692e(3) and § 1692e(10), which proscribe the following types of conduct by debt collectors:

> **(3)** The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> . . .
>
> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

The FDCPA imposes strict liability for violations, including those listed above. *See* 15 U.S.C. § 1692k(a). "An exception to strict liability exists only where a debt collector

---

[1] In addition to alleging claims under 15 U.S.C. § 1692e(3) and § 1692e(10), Plaintiff's complaint alleged FDCPA claims under 15 U.S.C. § 1692d and § 1692f. Defendant has moved to dismiss Plaintiff's claims under § 1692d and § 1692f pursuant to Rule 12(c) of the Federal Rules of Procedure. In its response, Plaintiff states that he "will stipulate to withdraw his claims of violations pursuant to 15 U.S.C. § 1692f and 15 U.S.C. § 1692d against this Defendant." (Pl.'s Resp. Br. at 7.) Therefore, the Court will dismiss Plaintiff's claims under § 1692d and § 1692f. Defendant's motion to dismiss these claims is, therefore, moot. The Court's discussion of Plaintiff's claims in this Opinion and Order is limited accordingly.

5

commits a violation resulting from a 'bona fide error.'" *Kistner v. The Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

The Sixth Circuit has "adopted the 'least-sophisticated-consumer' test for determining whether a debt collector's practice is deceptive." *Id.* (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998)). While the least sophisticated consumer standard is objective, it "is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999) (citation omitted). Even the least sophisticated consumer standard, however, "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Kistner*, 518 F.3d at 438-39 (quoting *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007) (internal quotations and citations omitted).

Plaintiff alleges that Defendant violated § 1692e(3) and § 1692e(10) because the February 6, 2008 collection letter Defendant sent to Plaintiff falsely implied that it "was from an attorney when, in fact, no attorney had reviewed the letter." (Pl.'s Resp. at i.) In a recent case, the Sixth Circuit held that a similar collection letter to that at issue in this case violated 15 U.S.C. § 1692e(3). In *Kistner*, *supra*, the defendant debt collector, Michael P. Margelefsky, LLC, sent a letter to plaintiff that contained the following:

> (1) the letterhead reads "*Law offices of* **Michael P. Margelefsky, LLC,**" (2) the letter informs the consumer that the account "has been referred to this office," (3) the letter includes a detachable payment voucher with instructions to "MAKE CHECK OR MONEY ORDER PAYABLE TO **MICHAEL P. MARGELEFSKY,**" (4) the payment voucher is to be returned to "THE LAW OFFICES OF MICHAEL P.

6

> MARGELEFSKY, LLC," (5) there is no disclaimer of attorney involvement in the letter, and (6) the signature block states "ACCOUNT REPRESENTATIVE, the law offices of MICHAEL P. MARGELEFSKY, LLC."

*Kistner*, 518 F.3d at 439. Based on the defendant's admissions that "he did not review [the plaintiff's] file, did not determine whether particular letters should be sent, and did not know the identities of the persons to whom the letters were sent," the Sixth Circuit in *Kistner* held that there was a genuine issue of material fact as to whether the collection letter "gives the impression that it [was] from an attorney even though it [was] not." *Id.* at 441.

The collection letter at issue in this case is materially identical to the letter at issue in *Kistner*. Nevertheless, Defendant argues that Plaintiff's reliance on *Kistner* is misplaced. This Court agrees. Unlike *Kistner* where there was no evidence that the defendant law firm had any involvement in the debt collection process, there is evidence in this case that Defendant's attorneys played a role in the debt collection process. Consequently, *Kistner* is factually distinguishable from this case. *See infra* pp. 9-10.

As Defendant asserts, the precise issue involved in this case is whether the review of Plaintiff's file by Defendant's attorneys was sufficient to satisfy § 1692e(3) and § 1692e(10). The Sixth Circuit has not addressed this precise issue. Furthermore, while the Second Circuit and Seventh Circuits have held that some meaningful professional involvement by an attorney is required under § 1692e(3) and § 1692e(10) so as not to mislead an unsophisticated consumer into believing that a dunning letter on attorney letterhead was from an attorney, *see Clomon*, 988 F.2d at 1320 and *Nielson v. Dickerson*, 307 F.3d 623, 638 (7th Cir. 2002), they have declined to delineate the minimum level of review required. *See Miller v. Wolfpoff*

*& Abramson, L.L.P.*, 471 F. Supp. 2d 243, 253 (E.D.N.Y. 2007)(citing *Miller v. Wolfpoff & Abramsom*, 321 F.3d 292, (2d Cir. 2003)and *Boyd v. Wexler*, 275 F.3d 642, 647 (7th Cir. 2001)). Notwithstanding the lack of clear boundaries on what is required to constitute meaningful attorney involvement sufficient to satisfy § 1692e(3) and § 1692e(10), guiding principles on what constitutes meaningful attorney involvement in the debt collection process have emerged from the case law. Based on these guiding principles, and the undisputed evidence in the record, this Court will grant summary judgment in Defendant's favor on Plaintiff's claims under § 1692e(3) and § 1692e(10).

As the Seventh Circuit stated, "an attorney sending dunning letters must be directly and personally involved in the mailing of the letters in order to comply with the strictures of FDCPA." *Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996). "This may include reviewing the file of individual debtors to determine if and when a letter should be sent or approving the sending of letters based on recommendations of others." *Id.* (citing *Clomon*, 988 F.2d at 1320). Furthermore, the FDCPA "can be complied with by delegation of part of the review process to a paralegal or even to a computer program . . ., provided that the ultimate professional judgment concerning the existence of a valid debt is reserved to the lawyer." *Boyd v. Wexler*, 275 F.3d 642, 647-48 (7th Cir. 2001)(citations omitted); *see also Nielson*, 307 F.3d at 638 (reiterating that the exercise of independent professional judgment is required under 15 U.S.C. § 1692e(3) and § 1692e(10)). "In an age of specialization,

professionals are not to be criticized for identifying subroutines that paraprofessionals can adequately perform under a professional's supervision." *Id.* at 248.

There is evidence in the record showing that Defendant's lawyers review a debtor's information, including Plaintiff's, to confirm that the debt is valid prior to sending an initial collection letter. (Elliott Dep. at 27.) Moreover, Defendant has proffered Ms. Elliott's affidavit, in which she explains in detail the procedures that her law firm has in place to determine whether a debt is valid. (*See* Elliott Aff. ¶ 8.) For example, Ms. Elliott states that "a claims specialist reviews the individual account information under [her] daily supervision and pursuant to training and procedures [she] developed, and determines whether the statute of limitations has passed, whether the debtor is located within the jurisdiction in which we practice, whether the debtor has filed bankruptcy, and whether any necessary information is missing or conflicting." (*Id.* ¶ 8c.) Furthermore, Ms. Elliott states that either herself "or a claims specialist under [her] direct and daily supervision" reviews all of the debtor's accounts "for any apparent problems, conflicting information, errors, or omissions." (*Id.* ¶ 8d.) After this review is completed and after "it is determined that the claim is valid and would warrant collection litigation in the event that traditional collection efforts are not successful," Defendant sends an initial collection letter prepared from a template that Ms. Elliott developed. (*Id.* ¶ 8e.) Indeed, Ms. Elliott has stated that she personally reviews a "large percentage" of the initial collection letters that Defendant sends to debtors. (Elliott Dep. at 41.)

Rather than discrediting Ms. Elliott's testimony with evidence, Plaintiff relies almost exclusively on the fact that Ms. Elliott stated at her deposition that a claims specialist, not an attorney, reviewed his collection letter prior to it being sent. The fact that someone other than an attorney may have prepared and sent a collection letter on attorney letterhead does not automatically lead to a violation of the FDCPA. As already indicated, law firms can comply with the FDCPA even when they delegate part of the review process, so long as "the ultimate professional judgment concerning the existence of a valid debt is reserved to the lawyer." *Boyd*, 275 F.3d at 647-48. Here, it is undisputed that one of Defendant's attorneys reviews the debtor's information to determine whether the debt is valid prior to sending the initial collection letter. (Elliott Aff. ¶¶ 8d.-8e.; *see also* Elliott Dep. at 27.) It is also undisputed that Defendant has procedures in place that allow its claims specialists to participate in this determination and that Ms. Elliott directly supervises her law firm's claim specialists. (Elliott Aff. ¶ 8c.) Plaintiff fails to proffer any evidence suggesting that this process was not followed before Defendant sent the collection letter or that the review conducted by Ms. Elliott or her law firm's attorneys did not constitute the type of meaningful involvement necessary to satisfy § 1692e(3) and § 1692e(10).

At the hearing, Plaintiff's counsel argued that the sheer volume of collection cases Defendant has suggests that Ms. Elliott's statement that an attorney reviews a debtor's file before any collection letter is sent out is incredible. In making this argument, Plaintiff's counsel apparently relies on Ms. Elliott's deposition. Viewing Ms. Elliott's deposition in a light most favorable to Plaintiff, Ms. Elliott testified that it is possible that her law firm sent more than 1,000 letters (of all kinds including initial collection letters) during the week of

February 6, 2008, that Defendant had more than 1,000 open collection files in February 2008 (the month Defendant sent Mr. Liang's letter), and that her law firm had more than 500 collection cases from Capital One.[2] (Elliott Dep. at 14, 16, 29.) Contrary to Plaintiff's contention, this is nothing like the evidence in *Boyd v. Wexler*, *supra*, where the plaintiff proffered concrete evidence of the number of collection letters the defendant law firm sent out in a given month. *See Boyd*, 275 F.3d at 644 (stating that over an eight-and-a-half month period the defendant law firm sent 439,606 pieces of mail, most of which was collection letters, which amounts to an average number of 51,718 pieces of mail per month). In this Court's opinion, Plaintiff's reliance on Ms. Elliott's deposition to show the number of collection cases Defendant has creates nothing more than a "metaphysical doubt" as to whether Ms. Elliott's testimony is untrue. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586, 106 S. Ct. at 1356. This, however, is insufficient to create a *genuine* issue of material fact necessary to withstand summary judgment. *See id.*

In conclusion, the Court finds that there is no genuine issue of material fact that one of Defendant's attorneys exercised the ultimate professional judgment in determining whether Plaintiff's debt was valid prior to sending the February 6, 2008 collection letter. Because

---

[2]Ms. Elliott also testified that she did not know the average number of initial collection letters her law firm sends per month, that she did not know whether her law firm sent more than 1,000 initial collection letters in February 2008, that she had no idea how many collection letters were sent on February 6, 2008. (Elliott Dep. at 11-15.)

there is no genuine issue of material fact in this regard, Defendant's collection letter did not falsely imply that it was "from an attorney."

Accordingly,

**IT IS ORDERED** that Plaintiff's claims under 15 U.S.C. § 1692d and § 1692f are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's claims under 15 U.S.C. § 1692e(3) and § 1692e(10) is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Adam G. Taub, Esq.
Michael J. Sullivan, Esq.